UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JULES WAGUESPACK | * | CIVIL ACTION NO. |
| Plaintiff | * | |
| | * | |
| VERSUS | * | |
| | * | JUDGE |
| PLIVA USA, INC., BARR | * | |
| PHARMACEUTICALS, INC., ACTAVIS, | * | |
| INC., and ACTAVIS ELIZABETH LLC, | * | |
| TEVA PHARMACEUTICALS USA, INC | * | MAGISTRATE JUDGE |
| Defendants | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## ORIGINAL COMPLAINT

Plaintiff, Jules Waguespack, brings this action against Defendants, **PLIVA USA, INC.,**

**BARR PHARMACEUTICALS, INC., ACTAVIS, INC, ACTAVIS ELIZABETH LLC, AND TEVA**

**PHARMACEUTICALS USA, INC.,** (collectively "Defendants"), and for his complaint alleges,

upon information and belief and based on the investigation to date of their counsel, as

follows:

## INTRODUCTION

## PARTIES

1. Plaintiff, Jules Waguespack, is an individual who is a resident and citizen of St.

Tammany Parish, Louisiana.

2. Defendant Pliva USA, Inc., (hereinafter referred to as "Pliva") is a New York corporation

with its principal place of business in New Jersey.  Pliva is a wholly owned subsidiary of Barr

Pharmaceuticals, Inc. Pliva may be served with process through its registered agent: Corporation Trust Company, 820 Bear Tavern Road, 3rd Floor, West Trenton, New Jersey 08628. Barr Pharmaceuticals, Inc. is being sued herein as the owner of Pliva and may be served with process at 225 Summit Avenue, Montvale, New Jersey 07645. Hereafter, Pliva and Barr Pharmaceuticals, Inc. will be collectively referred to as "Pliva."

3. Defendant Actavis Elizabeth LLC, (hereinafter referred to as "Actavis") is aDelaware corporation with its principal place of business in New Jersey. Actavis is a wholly owned subsidiary of Actavis, Inc. Actavis may be served with process at its principal place of business: 200 Elmora Avenue, Elizabeth, New Jersey 07207. Actavis, Inc. is being sued herein as the owner of Actavis and may be served with process at 14 Commerce Drive, Suite 301, Cranford, New Jersey 07016. Hereafter, Actavis and Actavis, Inc. will be collectively referred to as "Actavis."

4. Defendant Teva Pharmaceuticals USA, Inc. (hereinafter referred to as "Teva") is a Deleware corporation with a principal place of business in Pennsylvania. Teva may be served with process at its principal place of business: 1090 Horsham Road, North Wales, Pennsylvania, 19454.

## VENUE AND JURISDICTION

5. Both jurisdiction and venue are proper in the Eastern District of Louisiana. The Defendants conduct or have conducted business activity in St. Tammany Parish, Louisiana and the Defendants have distributed products throughout St. Tammany Parish. Plaintiff purchased and consumed the Defendants' products in the Eastern District of Louisiana.

6. Jurisdiction is based on complete diversity between the Plaintiff and all of the Defendants pursuant to 28 U.S.C. § 1332.

7.  Venue is proper as to causes of action against all Defendants because:

      A. A substantial part of the cause of action accrued in the State of Louisiana in that Plaintiff received and consumed the Defendants' pharmaceutical products in St. Tammany Parish, Louisiana and sustained injury in St. Tammany Parish, Louisiana.

      B.    All of the Defendants have directed their products into St. Tammany Parish, Louisiana.

      C.    All of the Defendants have sold their products in St. Tammany Parish, Louisiana.

      D.    Jefferson Parish sits in the Eastern District of Louisiana.

9.  The amount in controversy exceeds $75,000.00.

## STATEMENT OF FACTS

10.  Plaintiff brings this action for the purpose of recovering damages for the personal injuries. Plaintiff has suffered as a result of being prescribed and ingesting Reglan, metoclopramide and/or metoclopramide HCl (hereinafter referred to as "Reglan/metoclopramide").

11.  At all times material hereto, Defendant Pliva was engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting and/or selling, either directly or indirectly, through third parties or related entities, Reglan/metoclopramide in the State of Louisiana and in interstate commerce.

12.  At all times material hereto, Defendant Actavis was engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting and/or selling, either directly or indirectly, through third parties or related entities, Reglan/metoclopramide in the State of Louisiana and in interstate commerce.

3

13.  At all times material hereto, Defendant Teva was engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting and/or selling, either directly or indirectly, through third parties or related entities, Reglan/metoclopramide in the State of Louisiana and in interstate commerce

14.  At all relevant times, Defendants were acting by and through their agents, servants and/or employees, each of whom were acting within the scope and course of their employment by agency or authority on their behalf.

15.  At all times relevant hereto, Defendants were in the business of researching, designing, formulating, compounding, testing, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging, and/or advertising the pharmaceutical drugs known as Reglan/metoclopramide in the State of Louisiana and in interstate commerce.

16.  Plaintiff ingested the Reglan/metoclopramide.

17.  Plaintiff's ingestion of the Reglan/metoclopramide caused his Injuries.

18.  Plaintiff was not aware of information different from or contrary to the inaccurate, misleading, materially incomplete, false and/or otherwise inadequate information disseminated in the PDR, RLD, or by the NDA Holders.

19.  Plaintiff exhibited abnormal movements which have been linked to use of Reglan/metoclopramide.

20.  Plaintiff's use of Reglan/metoclopramide, as prescribed, resulted in exposure to the drugs which caused Plaintiff to suffer serious, permanent and disabling injuries, including but not limited to, injuries of or associated with the central nervous and extrapyramidal motor systems.

4

21. Plaintiff's serious and permanent injuries, as described above, came about as a foreseeable and proximate result of Defendants' dissemination of inaccurate, misleading, materially incomplete, false and otherwise inadequate information concerning the potential effects of exposure to and long-term ingestion of Reglan/metoclopramide to the medical community, Plaintiff, and other foreseeable users of the drug.

22. Plaintiff experienced medical and related expenses, loss of ability to provide household services, disfigurement, disability, pain, suffering, psychological injury and other injuries and damages doe to the prescription and ingestion of this drug.

23. This case involves Defendants' failure to warn doctors and patients of information within their knowledge or possession which indicated that the subject Reglan/metoclopramide, when taken for more than 12 weeks, caused serious, permanent and debilitating side effects.

24. Defendants jointly and severally marketed, manufactured and distributed Reglan/metoclopramide and encouraged the long term use of these drugs, and concealed the drug's dangerous side effects.

25. Reglan/metoclopramide is indicated only as short-term therapy for nausea, symptomatic gastroesophageal reflux and acute and recurrent diabetic gastroparesis.

26. Reglan/metoclopramide is indicated only for use for no greater than 12 weeks; however, Defendants represented that Reglan/metoclopramide was safe for use to treat nausea and/or esophageal reflux and/or gastroparesis for durations that exceed 12 weeks.

27. Patients who use Reglan/metoclopramide for long periods are at a significantly increased risk of developing a severe and permanent neurological movement disorder called Tardive Dyskinesia.

28. Other serious side effects caused by ingesting Reglan/metoclopramide for long periods include, but are not limited to, central nervous system disorders, depression with suicidal ideation, akathesia, tardive dyskinesia, tardive dystonia, visual disturbances and interference with drug metabolism.

29. Plaintiff was prescribed Reglan/metoclopramide by Dr. Michael Lavigne and Plaintiff had prescriptions of Reglan/metoclopramide filled on November 13, 2007, December 17, 2007, January 20, 2008, and February 21, 2008.

30. Patients who use Reglan/metoclopramide for periods that exceed 12 weeks are at a greater risk of developing these serious and permanent injuries.

31. Defendants each submitted an Abbreviated New Drug Application (ANDA) to the FDA, based on representations made by the Reference Listed Drug ("RLD") companies, requesting permission to manufacture, market, and distribute generic Reglan/metoclopramide.

32. Under the ANDA process, the Code of Federal Regulations required defendants to submit labels for Reglan/metoclopramide initially identical in all material aspects to the reference listed drug label.

33. Under the Code of Federal Regulations, defendants had a duty to ensure their Reglan/metoclopramide warnings to the medical community were accurate and adequate, to conduct post market safety surveillance, to review all adverse drug event information, and to report any information bearing on the risk and/or prevalence of side effects caused by Reglan/metoclopramide.

34. Under the Code of Federal Regulations, if defendants discovered information in the course of the fulfillment of their duties as outlined above, they were to report that information to

the medical community, Plaintiff and other foreseeable users of Reglan/metoclopramide to ensure that their warnings are continually accurate and adequate.

35. Defendants failed to investigate the accuracy of their metoclopramide and/or metoclopramide HCl drug labels.

36. Defendants failed to review the medical literature for the metoclopramide drug and/or metoclopramide HCl drug.

37. Defendants relied upon the name brand manufacturer and the referenced listed drug companies to review the aforementioned medical literature for Reglan/metoclopramide.

38. Under the FDA schema, if the FDA approves a label change as requested by an ANDA holder, the NDA holder (also referred to as the RLD company) must also amend its label.

39. Defendants failed to communicate the true and accurate risks and/or prevalence of severe neurological side effects resulting from the ingestion of drugs containing Reglan/metoclopramide.

40. Defendants disseminated to physicians, through package inserts, the publication of the PDR, and otherwise, information concerning the properties and effects of Reglan/metoclopramide, with the intention that physicians would rely upon that information in their decisions concerning the prescription of drug therapy for their patients.

41. Defendants knew, or should have known through the exercise of reasonable care, that the package insert for Reglan/metoclopramide substantially understated the prevalence of acute and long-term side effects on ingesting the drug.

42. Defendants failed to use reasonable care to modify the package insert to adequately warn physicians about the true risks of both short-term and long-term use, even after several

injured patients filed lawsuits alleging inadequate warnings and produced competent expert testimony supporting their allegations.

43.    Defendants owed a duty in all of their several undertakings, including the dissemination of information concerning Reglan/metoclopramide, to exercise reasonable care to ensure that they did not create unreasonable risks of personal injury to others.

44.  Reglan/metoclopramide was widely advertised by Defendants as a safe and effective treatment of diabetic gastroparesis, gastroesophageal reflux disease (GERD), nausea and other gastrointestinal disorders.

45.    Defendants failed to conduct and report post market safety surveillance on Reglan/metoclopramide.

46.  Defendants failed to review all adverse drug event information and to report any information bearing upon the adequacy and accuracy of their warnings, efficacy, or safety, including the risks and/or prevalence of side effects caused by Reglan/metoclopramide.

47.    Defendants failed to monitor all relevant scientific literature related to Reglan/metoclopramide.

48.  Defendants failed to disclose material safety information regarding the serious and permanent side effects caused by taking Reglan/metoclopramide for long periods of time.

49.  Defendants failed to report data, *regardless of the degree of significance,* regarding the adequacy and/or accuracy of their warnings, efficacy or safety of Reglan/metoclopramide.

50.  Defendants knowingly concealed from physicians material facts bearing on the interpretation of package insert disclosures that exposure to Reglan/metoclopramide can lead to tardive dyskinesia and other extrapyramidal side effects, that the risk is "believed" to increase

with duration of therapy and total cumulative dose, and that therapy for longer than 12 weeks "cannot be recommended."

51. Defendants concealed the fact that Reglan/metoclopramide is a neuroleptic agent and dopamine antagonist, which can be expected to lead to tardive dyskinesia and other extrapyramidal side effects with approximately the same high frequency, particularly in longer term use, as other neuroleptic drugs and that epidemiological studies have consistently confirmed this expectation.

52. Defendants also concealed the fact that the treatment of chronic or intermittent gastroesophageal reflux and/or diabetic gastroporesis, nausea, and/or other gastric disorders with Reglan/metoclopramide for longer than 12 weeks is unlikely to be reasonably safe.

53. Some or all of the Defendants, as a result of their participation as defendants in previous litigation concerning Reglan/metoclopramide products received clear notice of Wyeth's suppression of important safety information concerning Reglan/metoclopramide, yet despite this notice chose to ignore the information and join consciously in the suppression.

54. Defendants owed a duty to the general public and specifically to Plaintiff to exercise reasonable care in the design, study, development, manufacture, promotion, sale, marketing and distribution of their prescription medications, including the Reglan/metoclopramide at issue in this lawsuit. Defendants failed to exercise reasonable care in the design of Reglan/metoclopramide because as designed, it was capable of causing serious personal injuries such as those suffered by Plaintiff during foreseeable use. Defendants also failed to exercise reasonable care in the marketing of Reglan/metoclopramide because they failed to warn that, as designed, Reglan/metoclopramide was capable of causing serious personal injuries such as those suffered by Plaintiff during foreseeable use.

9

55.     Defendants breached their duty and were negligent in their actions, misrepresentations, and omissions toward Plaintiff in that Defendants:

a.      Failed to use due care in developing, testing, designing and manufacturing Reglan/metoclopramide so as to avoid the aforementioned risks to individuals when Reglan/metoclopramide was being used for treatment of patients;

b.      Failed to accompany their product with proper or adequate warnings regarding adverse side effects and health risks associated with the use of Reglan/metoclopramide and the comparative severity and duration of such adverse effects;

c.      Failed to accompany their product with proper or adequate rate of incidence or prevalence of permanent irreversible neurological damage;

d.      Failed to provide warnings that accurately reflected the symptoms, scope or severity of the side effects and health risks;

e.      Failed to conduct adequate pre-clinical and clinical testing and post-marketing surveillance to determine the safety of Reglan/metoclopramide;

f.      Failed to provide adequate training or information to medical care providers for appropriate use of Reglan/metoclopramide;

g.      Failed to adequately warn consumers and medical prescribers (but instead actively encouraged the sale of Reglan/metoclopramide), about the following: (1) that Reglan/metoclopramide should not be prescribed for more than 12 weeks; (2) that Reglan/metoclopramide can cause neuromuscular side effects, including, but not limited to, tardive

dyskinesia; (3) that Reglan/metoclopramide should be discontinued in the event of involuntary facial, tongue, jaw, limb or trunk movements; and (4) that the health risks posed by Reglan/metoclopramide may become permanent, debilitating, difficult, embarrassing, and painful, necessitating lengthy and/or repeated visits to the doctor, clinic, or hospital;

h.    Failed to adequately test and/or warn about the use of Reglan/metoclopramide, including, without limitation, the possible adverse side effects and health risks caused by the use of Reglan/metoclopramide;

i.    Failed to adequately warn users, consumers and physicians about the severity, scope and likelihood of neurological damage and related dangerous conditions to individuals taking Reglan/metoclopramide; and

j.    Representing to physicians, including but not limited to Plaintiff' prescribing physician, that this drug was safe and effective for use.

56.   The Reglan/metoclopramide was in substantially the same condition when it was ingested by Plainitff as it was in when it left the control of Defendants. Reglan/metoclopramide's capability to cause serious personal injuries and damages such as those suffered by Plaintiff was not due to any voluntary action or contributory negligence of Plaintiff. The Reglan/metoclopramide was consumed by Plaintiff as directed and without change in its form or substance.

57.   Defendants' failure to exercise reasonable care in the design and/or marketing of Reglan/metoclopramide was a proximate cause of Plaintiff' injuries and damages. Plaintiff seeks all damages to which they may be justly entitled.

58.  Plaintiff claims that Defendants are liable under the theory of products liability. Defendants were at all times relevant to this suit, and now are, engaged in the business of designing, manufacturing, testing, marketing, and placing into the stream of commerce pharmaceuticals for sale to, and use by, members of the public, including the Reglan/metoclopramide at issue in this lawsuit. The Reglan/metoclopramide manufactured by Defendants reached plaintiff without substantial change and was ingested as directed. The Reglan/metoclopramide was defective and unreasonably dangerous when it entered into the stream of commerce and when used by Plaintiff.

59.  Reglan/metoclopramide was unreasonably defective in design and marketing, considering the utility of the product and the risk involved in its use, because as designed and marketed, Reglan/metoclopramide could cause injuries such as those suffered by Plaintiff during foreseeable use. This fact was known to Defendants at the time Reglan/metoclopramide was placed into the stream of commerce, but was not readily recognizable to an ordinary consumer, including Plaintiff. Nonetheless, Defendants failed to warn that Reglan/metoclopramide as designed and marketed was capable of causing serious personal injuries such as those suffered by Plaintiff during foreseeable use. Such a failure to warn rendered the Reglan/metoclopramide unreasonably dangerously defective as designed and marketed.

60.  The defective and unreasonably dangerous design and marketing of Reglan/metoclopramide was a direct, proximate and producing cause of Plaintiff' injuries and damages. Under the Louisiana Products Liability Act, Defendants are liable to Plaintiff for all damages claimed in this case.

61.  Defendants were at the time of the acts forming the basis of this lawsuit, and now are, merchants with respect to the Reglan/metoclopramide at issue in this lawsuit. Defendants

marketed and promoted their Reglan/metoclopramide as safe and efficacious for its intended uses. The Reglan/metoclopramide consumed by Plaintiff reached Plaintiff without substantial change in its condition and was used by her as intended by Defendants. Defendants warranted that the Reglan/metoclopramide were not unreasonably dangerous and instead were merchantable and fit for its intended use and duration by Plaintiff.

62.     Defendants breached these warranties as the Reglan/metoclopramide was not merchantable, was unfit for its intended use and was unreasonably dangerous when comparing the benefits to the risks associated with its use. Plaintiff was injured as a result of these breaches of warranties.

63.     Defendants, through their advertising, labeling, marketing, and sales/detail persons, made significant representations, which were false, knowing that such representations were false and/or with reckless disregard for the truth or falsity of such representations, with the intent that Plaintiff rely on such material representations; Plaintiff acted in actual and justifiable reliance on such material misrepresentations and Plaintiff was injured as a result.

64.     In addition, and in the alternative if necessary, Defendants knowingly omitted and downplayed material information, which omission constitutes a positive misrepresentation of material fact, with the intent that Plaintiff rely on Defendants' misrepresentations; Plaintiff acted in actual and justifiable reliance on Defendants' representations and Plaintiff was injured as a result.

65.     Defendants misrepresented to the FDA, Plaintiff, and the health care industry the safety and effectiveness of Reglan/metoclopramide and/or fraudulently, intentionally and/or negligently concealed material information, including adverse information regarding the safety and effectiveness of Reglan/metoclopramide.

66.   Defendants made these misrepresentations and actively concealed adverse information at a time when they knew, or should have known, that Reglan/metoclopramide had defects, dangers, and characteristics that were other than what they had represented to Plaintiff and the health care industry generally. Specifically, Defendants misrepresented to and/or actively concealed from Plaintiff and the consuming public that:

     a.   Reglan/metoclopramide had statistically significant increases in neuromuscular side effects which could result in serious injury;

     b.   Patients prescribed Reglan/metoclopramide should not take it more than 12 weeks;

     c.   Reglan/metoclopramide causes neuromuscular side effects and those effects were underreported.

67.   As a direct and proximate result of the acts and omissions, suppression and misrepresentation of Defendants, Plaintiff suffered significant and ongoing injuries and damages.

68.   The unlawful actions of the Defendants was a proximate cause of the injuries and damages suffered by Plaintiff.  As a producing and proximate result of the above-described acts and omissions of Defendants, Plaintiff have incurred actual damages in excess of $75,000.00:

     (1)   Reasonable and necessary medical expenses incurred in the past;

     (2)   Reasonable and necessary medical expenses reasonably likely to be incurred in the future;

     (3)   Conscious physical pain and suffering experienced in the past;

     (4)   Conscious physical pain and suffering reasonably likely to be experienced in the future;

     (5)   Mental anguish in the past;

14

(6)     Mental anguish likely to be experienced in the future;

(7)     Physical disfigurement in the past;

(8)     Physical disfigurement likely to be experienced in the future;

(9)     Physical impairment in the past;

(10)    Physical impairment likely to be experienced in the future;

(11)    Loss of earnings in the past;

(12)    Loss of earnings/earning capacity likely to be experienced in the future;

(13)    Pre and post-judgment interest at the lawful rate; and

(14)    Such other applicable damages as the Court deems appropriate.

69.     Plaintiff ingested Reglan/metoclopramide in tablet form.  The tablets ingested by the Plaintiff were manufactured by the named Defendants herein.

70.     Plaintiff has been diagnosed with drug induced Parkinson's disease.

71.     Plaintiff was unaware of the link between drug induced Parkinson's disease and ingestion of Reglan/metoclopramide until after the February 26, 2009 FDA news release regarding Reglan/metoclopramide.

72.     Defendants' defective product proximately caused damage to the Plaintiff which said damage was caused by a characteristic of the product that rendered it unreasonably dangerous arising from a reasonably anticipated use of the product by the Decedent, thus rendering Defendant liable to the Plaintiff pursuant to LSA-R.S. 9:2800.54.

73.     The product in question is unreasonably dangerous for the following reasons:

a.      It is unreasonably dangerous in construction or composition as provided in R.S. 9:2800.55;

b.      It is unreasonably dangerous in design as provided in R.S. 9:2800.56;

15

c.   It is unreasonably dangerous because an adequate warning about the product was not provided as required by R.S. 9:2800.57; and

d.   It is unreasonably dangerous because it does not conform to an express warranty of the manufacturer about the product as provided in R.S. 9:2800.58.

74.   The characteristics of the product that render it unreasonably dangerous under R.S. 9:2800.55, et seq. existed at the time the product left the control of the manufacturer or resulted from a reasonably anticipated alteration or modification of the product.

75.   For all the reasons alleged herein, Defendants' defective product was unreasonably dangerous in construction and composition because, at the time the product left its manufacturer's control, the product deviated in a material way from the manufacturer's specifications or performance standards for the product, or from otherwise identical products manufactured by the same manufacturer.

76.   For all the reasons alleged herein, Defendants' defective product was unreasonably dangerous in design at the time the product left its manufacturer's control in that:

a.   There existed an alternative design for the product that was capable of preventing the Complainants' damage; and

b.   The likelihood that the product's design would cause the Complainants' damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product.

77.   For all the reasons alleged herein, Defendants' defective product was unreasonably dangerous because an adequate warning about the product had not been provided

16

and at the time the product left its manufacturer's control, the product possessed a characteristic that may cause damage and the manufacturer failed to use reasonable care to provide adequate warning of such characteristic and its danger to users and handlers of the product.

78.     Further, the Defendants, after the product left their control, acquired knowledge of a characteristic of the product that may cause damage and the danger of such characteristic (or, alternatively, Defendants would have acquired such knowledge if it had acted as a reasonably prudent manufacturer), and thus is liable for damages suffered by Plaintiff which arose as a consequence of Defendants' failure to use reasonable care to provide an adequate warning of such characteristic and its danger to users.

79.     To the extent the "learned intermediary" doctrine applies, Defendants are liable to the Plaintiff for failure to warn Plaintiff's physicians of the known dangers of prolonged use of Reglan/metoclopramide.

WHEREFORE, Plaintiff prays that upon final determination of these causes of action Plaintiff receive a judgment against Defendants Teva Pharmaceuticals USA, Inc, Pliva USA, Inc., Barr Pharmaceuticals, Inc. Actavis, Inc. and Actavis Elizabeth LLC as follows:

(a)     Actual damages as alleged, jointly and/or severally against Defendants, in excess of $75,000.00;

(b)     Costs of court and reasonable attorney fees necessary for preparation of this case for trial;

(c)     Prejudgment interest at the highest lawful rate allowed by law;

(d)     Interest on the judgment at the highest legal rate from the rate of judgment until collected; and

    (e)     All such other and further relief at law and in equity to which Plaintiff may show herself to be justly entitled.

Plaintiff hereby demands a trial by jury.

Respectfully Submitted,

**MARTZELL & BICKFORD**

*/s/ Lawrence J. Centola, III*
**LAWRENCE J. CENTOLA, III (#27402)**
338 Lafayette Street
New Orleans, Louisiana 70130
(504) 581-9065 (Phone)
(504) 581-7635 (Fax)

**GAINSBURGH, BENJAMIN, DAVID, MEUNIER AND WARSHAUER, L.L.C.**
**NAKISHA ERVIN-KNOTT (#25663)**
338 Lafayette Street
New Orleans, Louisiana 70130
(504) 581-9065 (Phone)
(504) 581-7635 (Fax)

***Attorneys for Plaintiff***